UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES WILLIAMS, JOSEPH DELGIUDICE, STJEPAN JOSIC, MARK WOLENBERG, ERIC KOTY, GUY DECASTRIS, THOMAS WEISER, and JACLYN PALMI, <br><br> Plaintiffs, <br> v. <br><br> SHERIFF JOHN ZARUBA, MAJOR DANIEL BILODEAU, and COUNTY OF DUPAGE, <br><br> Defendants. | Case No. 13-cv-08422 <br><br> Judge John W. Darrah |

# MEMORANDUM OPINION AND ORDER

Plaintiffs James Williams, Joseph DelGiudice, Stjepan Josic, Mark Wolenberg, Eric Koty, Guy DeCastris, Thomas Weiser, and Jaclyn Palmi (on behalf of the estate of Kirt Feinstein) (collectively, "Plaintiffs") filed a four-count Third Amended Complaint ("TAC") against Sheriff John Zaruba, Major Daniel Bilodeau, and the County of Dupage (collectively, "Defendants"), alleging three counts of violating Plaintiffs' constitutional rights, pursuant to 42 U.S.C. § 1983, and indemnification. Defendants have moved for partial judgment on the pleadings under Federal Rule of Civil Procedure 12(c). For the reasons explained below, Defendants' Motion is granted.

## BACKGROUND

The following facts are taken from the Third Amended Complaint and are accepted as true for purposes of this Motion. *Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 633 (7th Cir. 2007). Plaintiffs were, at all relevant times, employed by the DuPage County Sheriff's Office

and working under the authority of Zaruba and Bilodeau. (Am. Comp. ¶¶ 4-14.) Plaintiffs filed their Complaint on November 21, 2013. (Dkt. No. 63.)

*Deputy Joseph DelGiudice*

DelGiudice has been employed as a DuPage County Sheriff since January 4, 1985. (TAC ¶ 27.) Throughout his employment, DelGiudice has been an active promoter of collective bargaining rights of sheriff's deputies and has declined to contribute to Zaruba's political campaigns. (*Id*. ¶¶ 29-30.) In September 2008, Defendants demoted DelGiudice from the detective unit to court security. (*Id*. ¶¶ 32, 34.) In November 2011, DelGiudice was passed over for promotion in favor of another officer who was a financial supporter of Zaruba and did not support collective bargaining. (*Id*. ¶36.)

*Deputy Stjepan Josic*

Josic has been employed as a DuPage County Sheriff's Deputy since June 20, 1997. (*Id*. ¶ 43.) Throughout his employment Josic has been an active promoter of collective bargaining rights of sheriff's deputies and has declined to contribute to Zaruba's political campaigns. (*Id*. ¶¶ 46-47.) Josic alleges that shortly after Zaruba won the primary election, Josic's position on the bomb squad was eliminated, and after Zaruba won the general election, Josic was demoted to court security. (*Id*. ¶¶ 49-50.) In August 2010, Defendants caused Josic's sergeant exam to be unfairly scored, ultimately resulting in his denial of a potential promotion to sergeant. (*Id*. ¶ 52.) In 2010 and 2011, Josic requested to be transferred from court security to patrol, but these requests were ignored. (*Id*. ¶ 53.) In October 2013, Josic again requested transfer from court security to patrol, and his request was denied. (*Id*. ¶ 54.)

*Deputy Mark Wolenberg*

Wolenberg has been employed as a DuPage County Sheriff's Deputy since June 24, 1994. (*Id*. ¶ 57.) Throughout his employment, Wolenberg has been an active promoter of collective bargaining rights of sheriff's deputies and has declined to contribute to the political campaigns of Zaruba. (*Id*. ¶¶ 59-60.) From 2007 through 2009, Wolenberg submitted letters expressing interest in becoming a Field Training Officer, but he was passed over for less experienced candidates. (*Id*. ¶ 65.) In 2011 and 2012, Wolenberg served as a mentor to newly certified deputies, but his requests to be promoted to corporal were ignored, despite such promotions being given to mentors in the past. (*Id*. ¶ 63.) Zaruba and Bilodeau denied Wolenberg's letters of interest requests for transfer to the motorcycle unit, special operations intelligence officer, and bomb technician/hazardous device unit. (*Id*. ¶ 67.) Bilodeau, "specifically informed Deputy Wolenberg that [his] union involvement was bad for his career at the DuPage County Sheriff's Office. (*Id*. ¶ 68.)

*Deputy Eric Koty*

Koty has been employed as a DuPage County Sheriff's Deputy since May 29, 2001. (*Id*. ¶ 72.) Throughout his employment, Koty has been an active promoter of collective bargaining rights of sheriff's deputies and has declined to contribute to the political campaigns of Zaruba. (*Id*. ¶¶ 74-75.) Beginning in February of 2005, Koty was assigned to the patrol division. (*Id*. ¶ 76.) Since Koty's assignment to patrol, Zaruba and Bilodeau have passed him up for appointment to detective and "TAC units," in favor of less qualified candidates. (*Id*. ¶¶ 76-77.) Koty alleges that in early 2010, after an off-duty injury, Zaruba and Bilodeau denied him a light duty position. (*Id*. ¶ 78.) In May 2012, Koty was removed from the special

operations unit because of a union dispute involving Koty and other deputies in the special operations unit. (*Id.* ¶¶ 80-81.)

*Deputy Guy DeCastris*

DeCastris has been employed as a DuPage County Sheriff's Deputy since March 11, 1992. (*Id.* ¶ 86.) Throughout his employment, DeCastris has been an active promoter of collective bargaining rights of sheriff's deputies and has declined to contribute to the political campaigns of Zaruba. (*Id.* ¶¶ 88-89.) In 2006, while DeCastris was actively supporting Zaruba's campaign opponent, Zaruba demoted DeCastris from detective to the patrol division. (*Id.* ¶¶ 91-92.) In 2008, Defendant Zaruba caused DeCastris to be "unreasonably reprimanded" days after DeCastris testified before the Illinois Labor Relations Board. (*Id.* ¶ 93.) In June 2012, DeCastris was demoted to court security. (*Id.* ¶ 94.)

*Deputy Thomas Weiser*

Weiser was sworn in as a DuPage Sheriff's Deputy in 1985 and again on October 10, 2000. (*Id.* ¶ 100.) Throughout his employment, Weiser has been an active promoter of collective bargaining rights of sheriff's deputies and has declined to contribute to the political campaigns of Zaruba. (*Id.* ¶¶ 102-03.) In 2003, Zaruba and Bilodeau denied Weiser assignment to the Sheriff's bomb squad and to the detective's division, selecting instead less qualified officers. (*Id.* ¶ 107.) In 2007, Weiser was demoted to security at a high school after supporting Zaruba's political opponent. (*Id.* ¶ 108.) In 2009, Weiser was assigned to a motorcycle unit position for one day, but the position was revoked without explanation. (*Id.* ¶ 109.) In 2011, Zaruba and Bilodeau disproportionately punished Weiser for alleged violations of rules. (*Id.* ¶ 110.) In 2011, Weiser was assigned courthouse security. (*Id.* ¶ 111.)

*Deputy Kirt Feinstein*

Feinstein was employed as a DuPage County Sheriff's Deputy beginning on June 22, 1998. (*Id*. ¶ 116.) Throughout his employment, Feinstein has been an active promoter of collective bargaining rights of sheriff's deputies and has declined to contribute to the political campaigns of Zaruba. (Id. ¶¶ 118-19.) Because of his union and political activities, after an injury in 2007, Feinstein was assigned to light duty in the Corrections Bureau and not in the Law Enforcement Bureau. (*Id*. ¶ 122.) In 2010, Zaruba and Bilodeau demoted Feinstein to courthouse security without a reasonable basis. (*Id*. ¶ 123.) From June 2011 through July 2012, Feinstein was transferred numerous times within the courthouse in retaliation for his union and political activity. (*Id*. ¶ 124.) In November and December 2012, Feinstein was wrongfully denied sick time, in retaliation for his union and political activity. (*Id*. ¶ 125.)

*Defendants' Motion*

Defendants move for judgment on the pleadings as to all claims alleged by Plaintiffs to have occurred earlier than November 21, 2011, two years prior to the date this suit was filed. Defendants submitted the following table to clarify their motion:

| PLAINTIFF | UNTIMELY CLAIMS THAT SHOULD BE DISMISSED | CLAIMS THAT SHOULD SURVIVE PENDING MOTION |
|---|---|---|
| Joseph DelGiudice | 2008: assignment to court security<br>2008: passed over for Sergeant | 2011: passed over for Sergeant |
| Stjepan Josic | 2006: bomb squad position eliminated<br>2006: assignment to court security<br>2010: passed over for Sergeant<br>2010: no response to transfer request | 2011: no response to transfer request<br>2013: request for transfer denied |
| Mark Wolenberg | 2007-'09: passed over for Field Training Officer | 2011 & '12: Promotion request to Corporal ignored |
| Eric Koty | 2010: denied light duty assignment | 2012: assignment to court security |

5

| | | |
|---|---|---|
| Guy DeCastris | 2006: assignment to patrol<br>2008: unreasonable reprimand | 2012: assignment to court security |
| Thomas Weiser | 2003: denied assignment to bomb squad and detective division<br>2007: assignment to high school security<br>2009: motorcycle assignment removed | 2011: 30-day suspension<br>2011: assignment to court security |
| Kirt Feinstein | 2007: assignment to light duty<br>2010: assignment to court security | 2011 & '12: transfers within courthouse<br>2012: denied sick time |
| James Williams | None | 2011: assignment to court security |

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A 12(c) motion requires considering the pleadings alone, which include the complaint, answer, and written instruments attached as exhibits. *Hous. Auth. Risk Retention Group, Inc. v. Chicago Hous. Auth.*, 378 F.3d 596, 600 (7th Cir. 2004) (citing *Northern Ind. Gun & Outdoor Shows, Inc.* v. *City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998)). Judgment on the pleadings is only appropriate when "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004). As with motions brought pursuant to Federal Rule of Civil Procedure 12(b)(6), all well-pleaded facts are taken as true and all reasonable inferences are drawn in favor of the plaintiff. *Id*; *Guise v. BWM Mortg., LLC*, 377 F.3d 795, 798 (7th Cir. 2004).

Detailed factual allegations are not required; yet, the allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The

6

allegations must be sufficient to raise a right to relief above a speculative level. *Id*. The complaint does not have to anticipate affirmative defenses; however, dismissal is warranted where the plaintiff "effectively pleads herself out of court by alleging facts that establish the defense." *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006) (citing *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)).

**ANALYSIS**

Federal courts adopt the forum state's statute of limitations for personal injury claims to determine the statute of limitations for Section 1983 claims. *Ashafa v. City of Chi.*, 146 F.3d 459, 461 (7th Cir. 1998) (collecting cases). In Illinois, the statute of limitations is two years from the accrual of the claim. *Id*. Plaintiffs filed their original complaint on November 21, 2013. (Dkt. No. 1.) Therefore, any claims alleged to have occurred prior to November 21, 2011, would fall outside of the statute of limitations and must be dismissed. Plaintiffs argue that the allegations predating November 21, 2011, are not barred because they constitute part of a "continuing violation" of constitutional rights or, alternatively, that the statutes of limitations should be equitably tolled. (Pls.' Response at 8.)

"The continuing violation doctrine is usually invoked to defeat a statute of limitations bar for conduct that falls outside the relevant period." *Vance v. Ball State Univ.*, 646 F.3d 461, 469 (7th Cir.2011). The doctrine allows a plaintiff to bring otherwise untimely claims "in circumstances where it 'would be unreasonable to expect the plaintiff to perceive offensive conduct,' or when the earlier violation may be recognizable as actionable only in light of later events." *Pitts v. City of Kankakee*, 267 F.3d 592, 595 (7th Cir. 2001) (quoting *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 2001)).

Continuing violations in the context of employment have been recognized in three distinct circumstances: "where the exact day of the violation is difficult to pinpoint because the employer's decision-making process takes place over a period of time; where the employer has a systematic, openly espoused policy alleged to be discriminatory; and where the employer's discriminatory conduct is so covert that its discriminatory character is not immediately apparent." *Place v. Abbott Labs.*, 215 F.3d 803, 808 (7th Cir. 2000). Plaintiffs argue that the difficulty of pinpointing violations is present here, but "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). However, here, the dates of all but one of the alleged violations are easily ascertainable.[1] Plaintiffs make no argument that Defendants openly espoused a discriminatory policy.

In the third circumstance, the alleged discriminatory practice is evidenced by a series of discrete acts. *Selan v. Kiley*, 969 F.2d 560, 565 (7th Cir. 1992). But these acts must be "closely related enough to constitute a continuing violation" and not "merely discrete, isolated, and completed acts which must be regarded as individual violations." *Id.* (citing *Berry v. Board of Supervisors of L.S.U.*, 715 F.2d 971, 981 (5th Cir. 1983)). In contrast to a continuing violation, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113. Accordingly, the

---

[1] Plaintiffs argue that Josic's request for transfers were simply ignored, making it difficult to "pinpoint specific dates of responses that he never received." (Pls.' Response at 11.) However, this particular alleged violation is the only one presented by Plaintiffs on this point and cannot be considered in support of any of the other allegations.

continuing violation doctrine is only appropriate for claims whose "nature involves repeated conduct," like hostile-work-environment claims. *Morgan*, 536 U.S. at 115.

The Seventh Circuit is clear on this point: a hostile-work-environment claim is timely as long as any alleged act falls within the limitations period, "[b]ut this reasoning applies to hostile-work-environment claims only." *Adams v. City of Indianapolis*, 742 F.3d 720, 730 (7th Cir. 2014). Therefore, to the extent that Plaintiffs argue that, because "each [p]laintiff has alleged at least one act that concededly does or may fall within the two years prior to the initial lawsuit," (Pls.' Response at 12), all related claims are also timely, that argument must fail. Unlike a hostile-work-environment claim, which might not be immediately apparent, the alleged demotions and failures to promote are specifically among those claims deemed "easy to identify." *Id.* (citing *Morgan*, 536 U.S. at 114).

"Section 1983 claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006) (internal quotation marks and citations omitted). Although *Adams* instructs that discrete acts cannot overcome statutes of limitations by applying the continuing violation doctrine, it does not discuss the effect of a plaintiff learning of the discriminatory nature of the acts only after the limitations period has passed. In *Morgan*, the case on which *Adams* primarily relies, Justice Thomas noted that "[t]here may be circumstances where it will be difficult to determine when the time period should begin to run. One issue that may arise in such circumstances is whether the time begins to run when the injury occurs as opposed to when the injury reasonably should have been discovered." 536 U.S. at 114, n.7. However, this issue was not resolved in

9

*Morgan* because "[t]he District Court noted that 'Morgan believed that he was being discriminated against at the time that all of these acts occurred . . . .'" *Id*.

Plaintiffs allege that "[o]n or about February 12, 2013, the Plaintiffs learned that a federal jury found that Sheriff Zaruba violated the constitution[al] rights of a woman named Susan Lakics."[2] (TAC ¶ 130.) Defendants argue that "it defies logic for Plaintiffs to state that it was not until the verdict in [Lakics's case] that they first had any basis to attribute two dozen employment decisions over the course of ten years to the possibility of political considerations." (Defs.' Reply at 5.) Plaintiffs argue in their Response brief that the Lakics verdict "drew the connection between [the Plaintiffs'] political activities and the negative treatment they were receiving at work." (Pls.' Response at 12.) To the extent that the single paragraph in the TAC that regards the Lakics verdict was meant to allege it was at that moment that Plaintiffs became aware of their injuries, it does not do so plausibly. As Defendants argue, even if it was Lakics's suit that revealed potential discrimination, Plaintiffs should have been aware of Lakics's allegations when the suit was filed in 2009. Instead, Plaintiffs waited to file a claim until Lakics prevailed in 2013. There is no apparent reason, nor do Plaintiffs provide one, that Lakics's successful completion of her law suit against Zaruba would cause the Plaintiffs to then determine that they had been the victims of employment discrimination that occurred as many as ten years earlier. Her verdict may have convinced the Plaintiffs that they had a better chance of prevailing, but "[v]ictims of injury are not entitled to decide for themselves that suit would be futile and to

---

[2] Significantly, this is all Plaintiffs allege: that they learned there was a verdict. Nowhere in the TAC do Plaintiffs allege that they were only first made aware of possible discrimination at the time of the Lakics verdict.

grant themselves extra years, if not decades, in which to pursue litigation. They must file suit and try." *Moore v. Burge*, No. 13-3301, 2014 WL 5870675, at *4 (7th Cir. Nov. 13, 2014).

This analysis applies to Plaintiffs' equitable tolling argument as well. Plaintiffs argue that they "had no grounds on which to file a federal lawsuit until they reasonably could have appreciated the connection between the events taking place at work and their exercise of their First Amendment rights." (Pls.' Response at 14.) Again, Plaintiffs attribute undue reliance on the Lakics verdict. Equitable tolling is appropriate only when "the plaintiff *knows* he has been injured; the limitations period is tolled, however, if he cannot obtain information necessary to file suit." *Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003) (citing *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990)) (emphasis in original). Defendants have not alleged any impediment to investigating a *known* claim. Accordingly, equitable tolling is inappropriate here.

## CONCLUSION

For the reasons discussed above, Defendants' Motion for Partial Judgment on the Pleadings [67] is granted as to the Plaintiffs' claims based only on the allegations of misconduct occurring at specific times as follows: DelGiudice, 2008; Josic, 2006 and 2010; Wolenberg, 2007 through 2009; Koty, 2010; DeCastris, 2006 and 2008; Weiser 2003, 2007, and 2009; and Feinstein 2007 and 2010. None of the Plaintiffs shall be dismissed, as each has alleged at least one timely claim.

Date: 12/4/2014

JOHN W. DARRAH
United States District Court Judge